# 24-2647-cv(L), 24-2867-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

LEADENHALL CAPITAL PARTNERS LLP, LEADENHALL LIFE
INSURANCE LINKED INVESTMENTS FUND PLC,

*Plaintiffs-Appellees,*

ING CAPITAL LLC, HAYMARKET INSURANCE COMPANY, ACM
DELEGATE LLC, NATIONAL FOUNDERS LP,

*Intervenors,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANTS-APPELLANTS ADVANTAGE CAPITAL HOLDINGS LLC AND KENNETH KING

JONATHAN M. WATKINS
MICHAEL E. PETRELLA
MATTHEW M. KARLAN
CADWALADER, WICKERSHAM & TAFT LLP
*Attorneys for Defendants-Appellants
Advantage Capital Holdings LLC
and Kenneth King*
200 Liberty Street
New York NY 10281
(212) 504-6000

CP COUNSEL PRESS    (800) 4-APPEAL • (333478)

– v. –

ADVANTAGE CAPITAL HOLDINGS LLC, KENNETH KING,
777 PARTNERS LLC, 600 PARTNERS LLC, SPIESS III LLC,
SIGNAL SML 4 LLC, INSURETY AGENCY SERVICES LLC,
DORCHESTER RECEIVABLES II LLC,

*Defendants-Appellants,*

JOSH WANDER, STEVEN PASKO, SUTTONPARK CAPITAL LLC, SIGNAL
MEDICAL RECEIVABLES LLC, INSURETY CAPITAL LLP,
SUTTONPARK SERVICING LLC, SIGNAL SERVICING LLC,
INSURETY SERVICING LLC,

*Defendants.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Defendants-Appellants certifies that the following are corporate parents and/or publicly held corporations owning 10% or more of the stock of any Defendant-Appellant: None.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................IV

INTRODUCTION .................................................................................... 1

JURISDICTION ....................................................................................... 4

STATEMENT OF THE ISSUES................................................................. 5

STATEMENT OF THE CASE AND FACTS ............................................. 6

    A.    Legal Framework Governing Prejudgment Asset Restraints. ................................................................... 6

    B.    Factual Background...................................................... 12

        1.    The Parties............................................................ 12

        2.    Leadenhall Lends Under a Credit Facility Secured by Borrowers' Assets, But Not Guarantors' Assets ............................................... 13

        3.    Leadenhall Declares Events of Default and Accelerates Borrowers' Debt. ............................. 15

    C.    The Proceedings Below ................................................ 16

        1.    The Complaint for Money Damages .................. 16

        2.    Appellees' Application for Injunctive Relief ....... 16

        3.    The TRO and Preliminary Injunction ............... 17

        4.    The District Court Declines to Modify Its Order. ................................................................. 19

# TABLE OF CONTENTS (cont'd)

**Page**

SUMMARY OF ARGUMENT .................................................. 21

STANDARD OF REVIEW ................................................... 24

ARGUMENT ............................................................. 24

I.    BY RESTRAINING GUARANTORS' ASSETS BASED ON A SECURITY INTEREST IN BORROWERS' ASSETS, THE DISTRICT COURT EXCEEDED ITS AUTHORITY. .......................................................... 25

    A.    Leadenhall Claims No Security Interest in Guarantors' Assets. ........................................ 26

    B.    Leadenhall's Security Interest in Borrowers' Assets Provides No Authority to Freeze Guarantors' Assets. ........................................ 26

    C.    Absent Foreclosure, a Security Interest Cannot Support an Asset Freeze. ................................ 28

II.    LEADENHALL HAS NO EQUITABLE INTEREST IN GUARANTORS' ASSETS. .......................................... 31

    A.    Leadenhall Brings No Claim for Final Equitable Relief. ............................................... 32

        1.    Leadenhall's Contract Claims for Money Damages Are Claims at Law. ........................ 33

        2.    Leadenhall's Nominally Equitable Prayers Cannot Transform the Character of Its Claims. .............................................. 34

    B.    The Preliminary Injunction Is Ancillary Only to Leadenhall's Contract Claims for Money Damages. ........................................... 39

    C.    No Prayer to Compel a Pledge of Sufficient Collateral Creates an Equitable Interest. ............... 41

## TABLE OF CONTENTS (cont'd)

**Page**

CONCLUSION ........................................................................ 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AKF, Inc. v. AvantGarde Senior Living,*
 2021 WL 2662070 (N.D.N.Y. Apr. 29, 2021) ........................................ 29

*Bank of Am., N.A. v. Won Sam Yi,*
 294 F. Supp. 3d 62 (W.D.N.Y. 2018) ................................................... 30

*Cacchillo v. Insmed, Inc.,*
 638 F.3d 401 (2d Cir. 2011) ................................................................ 42

*De Beers Consol. Mines v. United States,*
 325 U.S. 212 (1945) ................................................................... 3, 7, 8

*Deckert v. Independence Shares Corporation,*
 311 U.S. 282 (1940) ............................................................................ 34

*Dong v. Miller,*
 2018 WL 1445573 (E.D.N.Y. Mar. 23, 2018) ..................................... 36

*E.E.O.C. v. KarenKim, Inc.,*
 698 F.3d 92 (2d Cir. 2012) .................................................................. 24

*Great-West Life & Annuity Ins. Co. v. Knudson,*
 534 U.S. 204 (2002) .................................................................... *passim*

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
 527 U.S. 308 (1999) .................................................................... *passim*

*GucciAmerica, Inc. v. Weixing Li,*
 768 F.3d 122 (2d Cir. 2014) ........................................................ *passim*

*III Fin. Ltd. v. Aegis Consumer Funding Grp., Inc.,*
 1999 WL 461808 (S.D.N.Y. July 2, 1999) .......................................... 30

*JLM Couture, Inc. v. Gutman,*
 91 F.4th 91 (2d Cir. 2024) ................................................................... 24

*Nechis v. Oxford Health Plans, Inc.,*
 421 F.3d 96 (2d Cir. 2005) .................................................................. 38

*Noble Prestige Ltd. v. Galle,*
 83 F.4th 1366 (11th Cir. 2023) ................................................ 22, 29, 30

*Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*,
   2013 WL 1915330 (S.D.N.Y. May 9, 2013) .................................... 37, 44

*Prof'l Merch. Advance Cap., LLC v. C Care Servs., LLC*,
   2013 WL 12109397 (S.D.N.Y. Oct. 2, 2013) ................................. 29, 44

*Prosper, Inc. v. Innovative Software Techs.*,
   188 F. App'x 703 (10th Cir. 2006) ....................................................... 44

*Quantum Corp. Funding, Ltd. v.*
   *Assist You Home Health Care Servs. of Va.*,
   144 F. Supp. 2d 241 (S.D.N.Y. 2001).................................................. 30

*Reich v. Continental Cas. Co.*,
   33 F.3d 754 (7th Cir. 1994)............................................................ 8, 33

*United States v. First National City Bank*,
   379 U.S. 378 (1965) ........................................................................... 36

*Wal-Mart Stores, Inc. Assoc.'s Health and Welfare Plan v. Wells*,
   213 F.3d 398 (7th Cir. 2000)............................................................... 37

*Winter v. Nat. Res. Def. Counsel, Inc.*,
   555 U.S. 7 (2008) ............................................................................... 42

**Statutes & Other Authorities:**

18 U.S.C. § 1964.................................................................................... 4

28 U.S.C. § 1292(a)(1)........................................................................... 4

28 U.S.C. § 1331.................................................................................... 4

28 U.S.C. § 1367.................................................................................... 4

Fed. R. App. P. 4(a)(1)(A) ..................................................................... 4

Fed. R. App. P. 4(a)(4)(A)(iv) ............................................................... 4

Fed. R. Civ. P. 59(e) ............................................................................ 19

Fed. R. Civ. P. 65 .................................................................................. 6

## **INTRODUCTION**

This appeal challenges a preliminary injunction that defies the Supreme Court's clear command in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999): before judgment, federal courts cannot freeze assets in which plaintiff has no lien or equitable interest. The district court correctly found that Leadenhall had no lien on Guarantors' assets, and it identified no "equitable interest" in those assets. Even so, it restrained Guarantors' assets pending judgment on Appellees' contract claims for money damages—precisely what *Grupo Mexicano* forbids.

The dispute arises from loans that Plaintiffs-Appellees (together, "Leadenhall") made to four special purpose entities ("Borrowers"). The loans are secured by the collateral pledged by Borrowers, which comprises all Borrowers' assets and equity. Borrowers' repayment obligations are also contractually guaranteed by their ultimate parents, 777 Partners LLC and 600 Partners LLC (together, "Guarantors"). That guaranty, however, is unsecured—Guarantors

-1-

pledged no assets as security.[1]   Borrowers allegedly defaulted on their loans, and Leadenhall exercised alleged contractual rights to accelerate and demand immediate repayment of Borrowers' entire debt.

Rather than foreclose on the collateral securing the loans (Borrowers' assets and equity), Leadenhall elected to seek to reduce its interests to a money judgment—it seeks to recover $609.5 million of Accelerated Debt through contract damages.   To up its odds of collecting, Leadenhall sought and obtained a preliminary injunction freezing Borrowers' and Guarantors' assets "up to the full amount of the Accelerated Debt."   (A.171.)   The district court justified this sweeping prejudgment asset freeze on two grounds.   Neither withstands scrutiny.

*First*, the district court reasoned that *Grupo Mexicano* is inapplicable because "Leadenhall has a secured first-priority security interest in the collateral *the borrowers* pledged," (A.819, 55:7–9 (emphasis added); *see also* A.1342, 48:11–13).   But a security interest in one obligor's assets is no basis to freeze different assets of another obligor.

---

[1] Defendant-Appellant Advantage Capital Holdings LLC ("A-CAP") is a lender to Leadenhall's Guarantors. Unlike Leadenhall, A-CAP holds, through affiliates, a perfected, first-priority security interest in substantially all of Guarantors' now-frozen assets.

No matter whether Leadenhall is otherwise "secured," *Grupo Mexicano* forbids freezing "*assets* in which" Leadenhall has "no lien or equitable interest." 527 U.S. at 310, 333.

*Second*, the district court held that Leadenhall's nominally equitable prayers for relief empowered it to freeze Guarantors' assets. But the Supreme Court foreclosed that tactic in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210–12 (2002). The "lawyerly inventiveness" of praying to enjoin breaches of contract and declare contract rights cannot transform a contractual interest into an equitable one. *Id.* at 211 n.1. Nor may assets be frozen to aid collection of contract damages. The Supreme Court is emphatic on the point: "No relief of this character has been thought justified in the long history of equity jurisprudence." *Grupo Mexicano*, 527 U.S. at 327 (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 222–23 (1945)).

Because Leadenhall has no lien or equitable interest in Guarantors' assets, the portion of the preliminary injunction restraining those assets should be vacated.

-3-

## JURISDICTION

The district court has jurisdiction under 28 U.S.C. § 1331 because the case arises under the RICO Act, 18 U.S.C. § 1964. The district court has supplemental jurisdiction over Appellees' state-law claims—including the contract claims at issue—under 28 U.S.C. § 1367.[2]

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because the district court entered interlocutory orders granting a preliminary injunction and refusing to modify that preliminary injunction.

This appeal is timely because the district court entered the preliminary injunction on July 8, 2024; A-CAP timely moved to modify that order July 31; the district court denied that motion on October 2; A-CAP filed its Notice of Appeal the next day; and the 777 Appellants[3] filed their Notice of Appeal on October 22. *See* Fed. R. App. P. 4(a)(1)(A), 4(a)(4)(A)(iv).

---

[2] Defendants have moved to dismiss Leadenhall's RICO claims, and the parties dispute complete diversity.

[3] The 777 Appellants are 777 Partners LLC, 600 Partners LLC, SPLCSS III LLC, Dorchester Receivables II LLC, Insurety Agency Services LLC, and Signal SML 4 LLC.

## STATEMENT OF THE ISSUES

In *Grupo Mexicano,* the Supreme Court held that district courts have no authority to freeze, pending adjudication of contract claims for damages, assets in which plaintiff has no lien or equitable interest.  527 U.S. at 310, 333.

This Court held, in *Gucci America, Inc. v. Weixing Li*, that district courts have the power freeze assets prejudgment only when (a) the plaintiff is pursuing a claim for final equitable relief and (b) the preliminary injunction is ancillary to that final relief.  768 F.3d 122, 131 (2d Cir. 2014).

The questions presented are:

1.     Whether a security interest in the assets of one obligor (here, Borrowers) empowers courts to restrain, prejudgment, different assets of a different obligor (here, Guarantors).

2.     Whether a creditor's prayers for contract-based injunctive and declaratory relief empower courts to freeze assets prejudgment.

-5-

## STATEMENT OF THE CASE AND FACTS

A-CAP and the 777 Appellants appeal from interlocutory orders entered by the U.S. District Court for the Southern District of New York (Koeltl, J.) issuing a preliminary injunction and denying a motion to modify that order.

### A.  Legal Framework Governing Prejudgment Asset Restraints.

In *Grupo Mexicano*, the Supreme Court considered "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." 527 U.S. at 310.  It answered that question in the negative.  *Id.* at 333.

The Court began by holding that federal courts' authority to issue preliminary restraints under Federal Rule of Civil Procedure 65 matches the scope of relief that was "traditionally accorded by courts of equity" in the days of the divided bench.  *Id.* at 319.  That authority is thus delimited by history, not a modern court's view on what is "just or convenient" or what might further the "grand aims of equity."  *Id.* at 342 (Ginsburg, J., concurring in part and dissenting in part).  As Justice Ginsburg described it for a four-Justice concurring and dissenting

opinion, the ruling of the Court adopts a "static conception of equity jurisdiction," under which a court's power is delimited by "the specific practices and remedies of the pre-Revolutionary Chancellor," *not* "the *principles* of equity existing at the separation of this country from England." *Id.* at 336 (Ginsburg, J., concurring in part and dissenting in part).

The Court's ultimate holding was driven by the "substantive rule that a general creditor *(one without a judgment)* had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." *Id.* at 319–20 (emphasis added). The Court repeatedly emphasized and followed that rule, which is "a fundamental protection in debtor-creditor law." *Id.* at 330; *see id.* at 319–320, 321, 323, 329.

In squaring its ruling with precedent, the Court underscored the holding in *De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212 (1945):  "a plaintiff" seeking "a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of

a judgment in such a law action." *Grupo Mexicano*, 527 U.S. at 327 (quoting *De Beers*, 325 U.S. at 222–23).

Three years after *Grupo Mexicano*, the Supreme Court expounded on the scope of federal courts' equitable jurisdiction in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002). There, the Court resolved whether, by praying for "injunctive and declaratory relief" to "enforce [a] reimbursement provision"[4] and recover money, plaintiff sought "equitable relief," and in particular "those categories of relief that were *typically* available in equity." *Id.* at 208, 210.

The Court explained that whether relief is "legal or equitable depends" on both "'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.* at 213 (quoting *Reich v. Continental Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994) (Posner, J.)). And it held that the relief sought was legal, not equitable. *Id.* at 221.

Two aspects of *Knudson* are particularly instructive. *First*, the Court looked through nominally equitable prayers and characterized

---

[4] The provision called for reimbursement of an ERISA plan, and "the Plan ha[d] 'a first lien'" in the recovery for which its assignee sought reimbursement. *Knudson*, 534 U.S. at 207.

plaintiff's claims for relief based on the "essence" of what they "seek," namely to "impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity." *Id.* at 210. In fact, the Court ruled that "[a]lmost *invariably* . . . suits seeking (whether by judgment, *injunction, or declaration*) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . . And '[m]oney damages are, of course, the classic form of *legal* relief.'" *Id.* (emphasis added in first) (citation omitted).

The Court thus rejected petitioners' argument that by seeking to enjoin violations of the parties' agreed terms, they sought equitable relief. *Id.* at 210–212. It explained that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 210–11. Claims arising from "a *contractual* obligation to pay *past due sums*" simply did not sound in equity, the Court ruled. *Id.* at 212; *see id.* at 201–211, 216.

*Second*, the Court differentiated (a) claims "in which the plaintiff 'could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds

for recovering money," which are claims "*at law*," and (b) truly equitable claims to recover a particular *res*. *Id.* at 213–14. Such claims in equity "ordinarily" come "in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff *could clearly be traced to particular funds or property in the defendant's possession*." *Id.* at 213. "But," the Court continued, "where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains . . . the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'" *Id.* at 213–14. Thus, for a claim for relief to "lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Against that backdrop, *Knudson* held that the relief sought "is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents." *Id.*

This Court has faithfully applied these principles. In *Gucci Am., Inc. v. Weixing Li*, this Court held that following *Grupo Mexicano*,

-10-

courts "maintain the equitable power" to "issue a prejudgment asset freeze" only when two conditions are met: "the plaintiff is pursuing a claim for final equitable relief," and "the preliminary injunction is ancillary to the final relief." 768 F.3d 122, 131 (2d Cir. 2014).[5] An injunction to preserve assets for satisfaction of an eventual money judgment, untethered to any cognizable equitable interest in specific property, remains forbidden.

These precedents establish the framework that governs this appeal. If Leadenhall has no (1) lien on Guarantors' assets, or (2)(a) genuine claim for final equitable relief directed to Guarantors' assets, (b) to which the preliminary injunction is ancillary, the district court lacked power to restrain Guarantors' use of their property before judgment.

---

[5] Those requirements were met in *Gucci* because the plaintiff sought an accounting of profits under the Lanham Act. An accounting of profits is both "one of the earliest examples of a restitutionary action in equity," *id.* at 131, and a "limited exception" to the usual rule limiting prejudgment restraints to the "identif[ied] particular res" in which plaintiff has an equitable interest. 534 U.S. at 214 & n.2.

## B.    Factual Background

## 1.   The Parties

Borrowers are four special purpose entities that invest in various forms of "receivables," including future cash flows from structured settlements and lottery winnings. (A.45–47, 49 ¶¶ 29–32, 42.)

Borrowers are remote subsidiaries of Guarantors, part of a diverse conglomerate with interests in professional sports, aviation, ESG investing, litigation funding, and insurance. (A.44 ¶¶ 24–25.)

Leadenhall is a London-based investor in mortality-linked assets. (A.43–44 ¶¶ 22–23.)

Defendant-Appellant Advantage Capital Holdings LLC ("A-CAP") is a lender to Leadenhall's Guarantors, and Defendant-Appellant Kenneth King is A-CAP's CEO. (A.48, 76–77 ¶¶ 38, 134.) Unlike Leadenhall, A-CAP holds, through affiliates, a perfected, first-priority security interest in substantially all of Guarantors' now-frozen assets. (A.76–77 ¶ 134; *see* A.949–95.) Neither A-CAP nor Mr. King is a party to any contract in suit.

### 2.  Leadenhall Lends Under a Credit Facility Secured by Borrowers' Assets, But Not Guarantors' Assets

To facilitate additional purchases of receivables, Borrowers entered into a Loan and Security Agreement ("LSA") with Leadenhall. (A.49–50 ¶ 44.)

Under the LSA, Borrowers could borrow money from Leadenhall, with such debts secured by all of Borrowers' assets and equity as collateral.  (A.38, 51–53, 55 ¶¶ 2, 47, 49, 51, 60, 62.)  The permissible amount of such borrowing for each Borrower was limited by reference to its "borrowing base."  (A.53 ¶ 52.)

Separately, Leadenhall also entered into a "Guaranty Agreement" with the Guarantors.  (A.51–52 ¶ 47.)  But unlike the LSA, the Guaranty Agreement was unsecured, as Guarantors did not pledge any assets of their own as security.  (*See* A.251–68 (Guaranty Agreement); *see also* A.58–60 ¶¶ 74–77 (describing the Guaranty Agreement and alleging no security interest in any asset of any Guarantor).)  Instead, through the Guaranty Agreement, Guarantors' contractually (and conditionally) "guaranteed" Borrowers' contractual Obligations.  (*See* A.250.)  In particular, Section 2(a) of the Guaranty Agreement, on which Leadenhall relies, promises "full and punctual

payment and performance when due . . . of the Guaranteed Obligations"—*i.e.*, the Borrowers' contractual obligations under the LSA. (A.254.)

The core "Obligation" of each Borrower under the LSA is "the punctual payment when due of all obligations and indebtedness of such Borrower." (CA–61.) The "Covenants" of Section V supply Borrowers' other Obligations. Pledging collateral is not one of them. Instead, in the part of the LSA that deals with Collateral, Section 2.15, Borrower "hereby grants . . . a first-priority security interest in the Collateral" "[t]o secure the performance by the Borrowers of all of the Obligations." (CA–82 § 2.15(a); CA–516 § 2.2; CA–528 § 2.2; CA–540 § 2.2; CA–552 § 2.2.) Thus, neither the LSA nor the Guaranty obligates Borrowers or Guarantors to provide substitute collateral in the event of a collateral shortfall or for any other reason. (See CA.23 and A.1032–1033 (citing A.224, 232–33 §§ 5.01(i), § 7.01(c), § 7.02(g); A.1044 § 2.07).)

An uncured shortfall in the value of the collateral is instead an Event of Default that gives Leadenhall the right to accelerate Borrowers' debt, as it has done here. (A.53–54 ¶ 53.)

-14-

Thus, under these contracts, Leadenhall only holds a security interest in the originally pledged assets and equity of the Borrowers. (*See* A.51–52, 53, 55 ¶¶ 47(d), 51, 62; A.209 n.1.) And because Leadenhall cannot claim to have a security interest in any assets of the Guarantors, the financing statements it has filed relate only to the assets and membership interests of the Borrowers. (*See* A.949–995; CA.33 n.22.) Leadenhall thus has no security interest in Guarantors' assets, a fact which appears to have been acknowledged by the district court. (A.780, 819 at 16:24–25, 55:7–9; A.1346 at 52:17–18.)

### 3. Leadenhall Declares Events of Default and Accelerates Borrowers' Debt.

Borrowers began borrowing under the LSA in May 2021. (A.63 ¶ 89.) Leadenhall alleges that from inception, two of the four Borrowers overstated the value of their pledged receivables—and thus their borrowing bases under the LSA—in the monthly reports they provided to Leadenhall. (A.64, 66–68, 76–77 ¶¶ 92, 99, 103, 131, 134.)

In response, Leadenhall noticed defaults under the LSA and accelerated the full amount of Borrowers' debts, which totaled more than $609 million. (A.89–90 ¶¶ 160, 171–72; A.184, 198.) Leadenhall now seeks that amount in contract damages. (*Id.*)

-15-

C.  **The Proceedings Below**

1.  **The Complaint for Money Damages**

Appellees' complaint asserted nine claims for relief, including the contract claim at issue here.[6]  (A.37 ¶¶ 212–281.)  The final paragraph of every claim demanded money damages—and nothing else. (*See* A.105, 108–09, 111–13, 115–17 ¶¶ 218, 229, 236, 246, 254, 260, 270, 277, 281.)

2.  **Appellees' Application for Injunctive Relief**

When Leadenhall applied for a temporary restraining order, it did so based only on its contract claims (A.177, 192), which seek $609.5 million of Accelerated Debt as damages.

Leadenhall sought to freeze assets of Borrowers and Guarantors sufficient to cover the monetary judgment it seeks (A.190). Leadenhall argued that Defendants might "becom[e] insolvent to prevent Leadenhall from enforcing any judgment against Defendants in this litigation."  (A.368 ¶ 5; A.1016 (assertedly seeking to preclude Borrowers

---

[6] Leadenhall's motion for a temporary restraining order, which was later converted into the preliminary injunction, was based on its original complaint.  (A.37.)  Leadenhall filed an Amended Complaint after the preliminary injunction was entered.  (A.1073.)

-16-

and Guarantors from using insolvency as a "shield against judgment").) Its only stated purpose for the relief was to prevent Defendants from dissipating assets and frustrating the collection of a final judgment. (A.190, 198.)  (*See generally* A.169–709.)

### 3. The TRO and Preliminary Injunction

On June 7, 2024, the district court granted the temporary restraining order (the "TRO"), which "other than in the normal and ordinary course of business":

> (A) prohibits selling, transferring, converting, pledging, or encumbering the assets pledged as collateral by the Borrowers to Leadenhall under the Loan and Security Agreement dated May 7, 2021;

> (B) to the extent the value of the assets pledged as collateral by the Borrowers to Leadenhall is less than the full amount of the Accelerated Debt, prohibits the expenditure or dissipation of any cash or cash equivalents owned by the Borrowers and Guarantors sufficient to cover the full amount of the Accelerated Debt;

> (C) to the extent the value of (i) the assets pledged as collateral by the Borrowers, plus (ii) the value of any cash or cash equivalents owned by the Borrowers and Guarantors is insufficient to cover the full amount of the Accelerated Debt, prohibits the expenditure or dissipation by the Borrowers and Guarantors of any cash or cash equivalents received from any sale or transaction up to the full amount of the Accelerated Debt;

-17-

(D) prohibits the Borrowers and Guarantors from taking any action to dissipate the value of their assets, including by transferring assets to any Defendant;

(E) requires the Borrowers and Guarantors to provide notice . . . of any attempt by any Defendant to foreclose on, repossess, or exercise remedial actions against the assets of the Borrowers and Guarantors and/or prevent any Defendant from foreclosing on, repossessing, or exercising remedial actions against the assets of the Borrowers and Guarantors.

(A.833–34.)

Because Leadenhall moved on only its contract claims, the district court analyzed only Leadenhall's likelihood of success on the merits of those claims. (*See* A.816–17 at 52:4–53:5.) It held that Leadenhall's likely success on those claims—and those claims alone—was "a sufficient basis for the Court to order the relief requested." (A.765 at 52:14–16.)

Consistent with the sole rationale expressed in Leadenhall's application, the district court entered the preliminary injunction to "prevent the defendant borrowers and guarantors from dissipating their assets to frustrate the collection of a final judgment." (A.1338 at 44:9–11.)

The district court distinguished *Grupo Mexicano* based on Leadenhall's security interest in *Borrowers'* assets:

> As to the guarantors, the guarantors guaranteed performance of all the borrowers' obligations to Leadenhall. Accordingly, this case is distinguishable from *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999), which the defendants cite. In *Grupo Mexicano*, as opposed to this case, the notes issued by the borrower and guaranteed by the guarantors were explicitly unsecured.

(A.819 at 55:13–19.)

The district court later converted the TRO into a preliminary injunction on the same terms and "for the same reasons that [it] issued the TRO." (SPA.1–3; A.933 at 32:10–11.)

### 4.    The District Court Declines to Modify Its Order.

A-CAP moved to modify the preliminary injunction under Federal Rule of Civil Procedure 59(e) to exclude from the restraint assets in which Leadenhall has no lien or equitable interest. The district court denied A-CAP's motion from the bench, (A.1350 at 56:14–18; *see also* SPA.4), reasoning that "Leadenhall has a security interest in the assets of the Borrowers" and "also has an interest in the assets of the

-19-

Guarantors who guaranteed 'performance when due.'" (A.1346 at 52:9–13, 17–20.)

The district court ruled that "this is not an action for money damages alone," because Leadenhall's complaint and Amended Complaint include equitable prayers, and in a "mixed case," district courts are empowered to restrain assets prejudgment.  (A.1346-47 at 52:24–53:10.)

## SUMMARY OF ARGUMENT

The district court erred in granting a preliminary injunction freezing Guarantors' assets in aid of Leadenhall's efforts to obtain contract damages. In *Grupo Mexicano*, the Supreme Court held that district courts have no authority to impose a preliminary injunction on a debtor's assets when the creditor claims no lien or equitable interest in those assets. 527 U.S. at 310, 333. The Supreme Court thus reaffirmed the "substantive rule" that "a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." *Id.* at 319–20. The district court nonetheless enjoined Guarantors' use of its assets in aid of Leadenhall's contract claims for money damages. In doing so, the district court committed legal error in two significant ways.

*First*, the district court exceeded its authority by restraining Guarantors' assets based on Leadenhall's asserted security interest in Borrowers' assets. Leadenhall has no lien or security interest in Guarantors' assets. *See infra* Section I.A. And while Leadenhall does assert a security interest in Borrowers' assets, that provides no basis

under *Grupo Mexicano* to enjoin different assets of different parties—Guarantors. *See infra* Section I.B. In any case, no security interest can authorize a prejudgment freeze when, as here, plaintiff seeks money damages rather than the equitable remedy of foreclosure. *See, e.g.*, *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1384 (11th Cir. 2023). *See infra* Section I.C.

Second, Leadenhall has no equitable interest in Guarantors' assets. To show an equitable interest, Leadenhall must "[p]ursue a claim for final equitable relief" that was "traditionally available" from and "accorded by courts of equity." *Gucci Am.*, 768 F.3d at 131. It does not. The district court granted Leadenhall preliminary injunctive relief based on its contract claims—quintessential claims at law—to preserve its ability to collect money damages. The Court erred by evading *Grupo Mexicano* on the ground that Leadenhall's complaint also includes equitable prayers—contract-based prayers for injunctive and declaratory relief. The plaintiff in *Grupo Mexicano* itself prayed, much like Leadenhall, for permanent injunctive relief, but that did not change the result. *Grupo Mexicano*, 527 U.S. at 314. And *Knudson* forecloses equitable jurisdiction over contract claims to which prayers (like

-22-

Leadenhall's) for injunctive and declaratory relief are appended. 534 U.S. at 210-12. *See infra* Section II.A.

The injunction order also errs because it is ancillary only to Leadenhall's contract claims for money damages—its sole aim is to preserve assets in aid of collection. But "seeking equitable assistance in the collection of a legal debt" simply "has nothing to do with the preliminary relief" that is properly "available in a suit seeking equitable relief." 768 F.3d at 131 (quoting *Grupo Mexicano*, 527 U.S. at 325). *See infra* Section II.B.

Nor can the district court's authority be expanded by recasting the complaint as one seeking specific performance of a purported obligation to pledge additional collateral. Leadenhall's complaint contains no claim for specific performance, and it never even tried to show that it would likely succeed on the merits of such a claim— or one to compel such a pledge by mandatory injunction. Nor could it: the agreements at issue do not require Guarantors to pledge collateral. In any case, a purported claim to pledge "sufficient" replacement does not seek to "restore to the plaintiff particular funds or property in the defendant's possession," but rests instead on the premise that Leadenhall

-23-

is "contractually entitled to [the pledging of] some funds for benefits that [it] conferred" under the LSA. *Knudson*, 534 U.S. at 213–214. Such a claim is "not equitable . . . but legal" because it would not seek any "specific assets that are currently in Defendants' possession but, according to Plaintiff, 'belong[] in good conscience to [it].'" *Id.* at 213–14. *See infra* Section II.C.

The district court's asset freezing preliminary injunction order should be vacated as to Guarantors' assets.

## STANDARD OF REVIEW

This Court reviews errors of law on which preliminary injunctions are based *de novo*. *See, e.g.*, *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 99 (2d Cir. 2024); *E.E.O.C. v. KarenKim, Inc.*, 698 F.3d 92, 99–100 (2d Cir. 2012).

## ARGUMENT

*Grupo Mexicano* forbids freezing assets in which the plaintiff has no "lien or equitable interest." 527 U.S. at 310, 333. The district court did not find Leadenhall to have either a lien or an equitable interest in Guarantors' assets. It nevertheless froze Guarantors' assets, and justified the freeze in two ways. First, it reasoned that Leadenhall's

-24-

security interest in *Borrowers'* assets authorized freezing *Guarantors'* property. Second, it held that Leadenhall's prayers authorized it to freeze assets prejudgment and that Leadenhall had "an interest in Guarantors' assets" that stemmed from a contract. Both are legal error.

## I. BY RESTRAINING GUARANTORS' ASSETS BASED ON A SECURITY INTEREST IN BORROWERS' ASSETS, THE DISTRICT COURT EXCEEDED ITS AUTHORITY.

The district court's reliance on Leadenhall's purported status as a "secured" creditor was erroneous. *First*, Leadenhall has no security interest (and certainly no "lien") in any asset of Guarantors. *Second*, Leadenhall's security interest in *Borrowers'* assets is irrelevant, because the analysis under *Grupo Mexicano* turns on the specific assets sought to be restrained, not the creditor's status as to other assets. *Third*, even if—contrary to the facts—Leadenhall had a security interest in some of Guarantors' assets, the asset-freezing injunction was improper because Leadenhall does not seek final relief (foreclosure) with respect to those specific assets, nor did the Court limit the injunction to those specific assets.

### A. Leadenhall Claims No Security Interest in Guarantors' Assets.

As Leadenhall concedes and the district court acknowledged, Leadenhall has no lien or security interest in any asset of Guarantors. (A.1334–35 at 40:7–41:2; A.1346 at 52:17–23; A.1347–48 at 53:21–54:6.) While Guarantors did guarantee the "performance and payment when due" of Borrowers' obligations, Guarantors pledged no asset of their own as collateral. *See Supra* Statement of the Case and Facts B.2. There is thus no lien-based justification for the preliminary restraint on Guarantors' assets.

### B. Leadenhall's Security Interest in Borrowers' Assets Provides No Authority to Freeze Guarantors' Assets.

The district court erred by using Leadenhall's "secured first-priority interest in the collateral the borrowers pledged" to justify a freeze of *different* assets—Guarantors'. (A.819 at 55:7–19; A.933 at 32:10–11; *see* A.1339, 1342 at 45:2–5, 48:9–15.) The district court reasoned that Leadenhall's security interest in Borrowers' assets makes Leadenhall a "secured creditor," and it held that "*Grupo Mexicano* does not control where a secured creditor seeks a preliminary injunction restraining asset transfers." (A.1345 at 51:2–3; *see* A.771 7:5–10.) That is wrong.

-26-

*Grupo Mexicano*'s core concern—protecting a debtor's right to use its unencumbered property—applies regardless of whether the creditor is otherwise "secured."  Unless the creditor has "an interest in the property" to be restrained "which equity could . . . act upon," 527 U.S. at 323, courts are powerless to intrude on debtors' property rights.

In "follow[ing] the well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property," *Grupo Mexicano* neither uncovered nor created an exception to the rule for secured creditors.  *Id.* at 321.  To the contrary, while respondents "assert[ed] that there were . . . exceptions to the general rule," the Court was "not inclined to speculate upon the existence or applicability to this case of any exceptions."  *Id.*  The Court's holding thus applies to all "general creditors" ("one[s] without a judgment").  *Id.* at 319.  That includes Leadenhall here.

The district court's contrary approach would write *Grupo Mexicano* out of the law for general creditors with any security interest in any asset of any debtor anywhere.  So long as a creditor had *any* security interest, they would be given a "new" and "powerful weapon of

-27-

oppression" that would upset "the balance between debtor's and creditor's rights which has been developed over centuries." *Id.* at 330–31. But that balance may be disturbed only by Congress, not "judicial fiat." *Id.* at 331; *see id.* at 322, 329.

## C. Absent Foreclosure, a Security Interest Cannot Support an Asset Freeze.

In all cases, the district court erred by freezing Guarantors' assets based on a security interest in Borrowers'. Yet, even a (counterfactual) security interest in some asset of Guarantors would not authorize courts to restrain those assets prejudgment on Leadenhall's contract claims.

While it discussed the absence of a "lien," *Grupo Mexicano* did not address whether or when a security interest in particular assets can itself authorize courts to freeze those assets prejudgment,[7] and neither this Court nor the Supreme Court has confronted the question since. The Eleventh Circuit—the only court of appeals to consider the matter—holds

---

[7] While *Grupo Mexicano* held that district courts *lack* the power to restrain assets unencumbered by plaintiff's "lien or equitable interest," 527 U.S. at 310, 333, it did not decide whether a lien—much less a security interest—on particular assets is sufficient to permit prejudgment restraint on those assets to prevent their dissipation pending a potential money judgment.

-28-

that "a lien against property" is only "sufficient to give the district court the equitable authority to issue preliminary injunctive relief" when "the plaintiff has sought to foreclose on that lien." *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1384 (11th Cir. 2023). Its rationale: "An action to reduce the obligation established by" a security interest "to judgment is one at law, . . . whereas a foreclosure action is equitable in nature." *Id.* at 1383. Well-reasoned rulings from district courts within this Circuit are in accord. *See, e.g.*, *Prof'l Merch. Advance Cap., LLC v. C Care Servs., LLC*, 2013 WL 12109397, at *2 (S.D.N.Y. Oct. 2, 2013) (Sullivan, J.) ("Plaintiff is not entitled under federal law to a TRO limiting Defendants' use of their own assets [because] despite Plaintiff's security interest, it has not made a claim reaching any particular asset of Defendants."); *see also AKF, Inc. v. AvantGarde Senior Living*, 2021 WL 2662070, at *6 (N.D.N.Y. Apr. 29, 2021) (denying asset freeze because "Plaintiff seeks no relief with respect to that security interest that could even arguably be construed as equitable").

Those holdings are faithful to this Court's holding in *Gucci*: Courts are authorized to freeze assets prejudgment only when that relief was "'traditionally accorded by courts of equity,'" and thus only when

plaintiff pursues final equitable relief. *Gucci Am.*, 768 F.3d at 131. Neither Leadenhall nor the district court suggested, however, that courts of equity traditionally froze assets in contract cases when plaintiff had a security interest in the frozen assets, and Appellants are unaware of any authority supporting that proposition. Here, Leadenhall applied for relief based exclusively on its contract claims. "Until and unless" Leadenhall seeks to foreclose, Leadenhall has "not invoked the district court's equitable power" to restrain *any* asset. *Noble Prestige Ltd.*, 83 F.4th at 1384.

While some district courts have held that a security interest can authorize a preliminary asset-freezing injunction, those cases strictly limit the restraint to the particular assets in which the plaintiff claims a security interest.[8]

---

[8] *See, e.g.*, *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of Va.*, 144 F. Supp. 2d 241, 250 & n.9 (S.D.N.Y. 2001) (enjoining "only a portion of" the receivables pledged by borrowers: the "specific funds" in which plaintiff "possess[ed] a security interest"); *III Fin. Ltd. v. Aegis Consumer Funding Grp., Inc.*, 1999 WL 461808, at *4 & n.1 (S.D.N.Y. July 2, 1999) (holding that the preliminary injunctive relief at issue was "proper" because "[plainitff] claims a security interest in the assets subject to the preliminary injunction"); *see also Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 83 (W.D.N.Y. 2018) (restraining only "the Collateral").

The ruling below is the first and only case to hold that a security interest in some assets empowers federal courts to freeze others. The sort of freeze ordered below has thus never been available in any other federal court at any time—to include courts of equity in the days of the divided bench.[9] Granting the relief was therefore outside the district court's powers, no matter how "just or convenient" it believes the preliminary injunction to be. *Grupo Mexicano*, 527 U.S. at 328.

## II. LEADENHALL HAS NO EQUITABLE INTEREST IN GUARANTORS' ASSETS.

For a creditor to have an "equitable interest" sufficient to authorize a prejudgment asset freeze, it must "pursu[e] a claim for final equitable relief" that was "traditionally available" from and "accorded by courts of equity," and "the preliminary injunction [must be] ancillary to the final relief." *Gucci Am.*, 768 F.3d at 131. Leadenhall has no equitable interest in any asset of Guarantors, and the district court erred by restraining them based on "an interest" based exclusively in contract.

---

[9] The district court did not hold to the contrary. Instead, it faulted A-CAP for failing to prove a negative: that the relief was not typically available from the English Court of Chancery in 1789. (A.1300–01 at 6:23–7:15.) The burden, however, was Leadenhall's—one it did not and cannot meet. (A.1031–34.)

*First*, Leadenhall brings no claim for final equitable relief. It applied for the preliminary injunction based only on its contract claims for money damages, the quintessential claim at law. Creditors cannot evade *Grupo Mexicano* by appending equitable prayers. Nor can Leadenhall's recently added fraudulent transfer claims suffice.

*Second*, the preliminary injunction is ancillary only to Leadenhall's ability to collect the contract damages it seeks, not any final equitable relief.

*Third*, an imagined contractual obligation to pledge sufficient replacement collateral cannot support a restraint on Guarantors' assets. Leadenhall failed to plead, move for relief on, or show a likelihood of success on a mandatory injunction compelling such a pledge. What is more, under the plain contract language, neither the LSA nor the Guaranty obligates any entity to pledge replacement collateral.

## A.      Leadenhall Brings No Claim for Final Equitable Relief.

For the district court to "interfere with the [Guarantors'] use of [their] property" prejudgment, *Grupo Mexicano*, 527 U.S. at 320, Leadenhall must "pursu[e] a claim for final equitable relief" against Guarantors' assets, *Gucci Am.*, 768 F.3d at 131 (citation omitted). Yet

-32-

Leadenhall seeks none of the "categories of relief that were *typically* available in equity." *Knudson*, 534 U.S. at 210 (emphasis in original). To the contrary, it brings claims at law seeking money damages.

> **1.    Leadenhall's Contract Claims for Money Damages Are Claims at Law.**

Whether relief is "legal or equitable depends" on both "'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Knudson*, at 213 (quoting *Reich v. Continental Cas. Co.,* 33 F.3d 754, 756 (7th Cir. 1994) (Posner, J.)). Here, Leadenhall applied for preliminary relief based only on its contract claims against Borrowers and Guarantors. (A.816 at 52:14–16.) The remedy it seeks is $609.5 million in allegedly overdue Accelerated Debt as contract damages. (A.772 at 8:7–11 (counsel for Leadenhall explaining proposed temporary restraining order to target "$609 million in accelerated debt.")).

That is no equitable claim for relief. To the contrary, a "claim for money due and owing under a contract is quintessentially an action at law . . . . And money damages are, of course, the classic form of *legal* relief." *Knudson*, 534 U.S. at 210 (internal quotations omitted) (emphasis in original). By seeking "to impose personal liability on respondents for

-33-

a contractual obligation to pay money," Leadenhall thus seeks "relief that was not typically available in equity." *Id.*

## 2. Leadenhall's Nominally Equitable Prayers Cannot Transform the Character of Its Claims.

The district court nevertheless held that when a secured creditor[10] "seek[s] both monetary and equitable relief, *Grupo Mexicano* does not control, and this Court has the authority to issue a preliminary injunction to prevent the dissipation of assets." (A.1347 at 53:11–15.) Indeed, it read *Grupo Mexicano* to "distinguish[]" *Deckert v. Independence Shares Corporation*, 311 U.S. 282 (1940), because "the plaintiffs in that case sought an equitable remedy." (A.1343 at 49:22–50:4.) The district court did not, however, test whether Leadenhall's prayers gave Leadenhall an "equitable interest" in particular assets of the sort demanded by *Grupo Mexicano*, *Knudson*, and *Gucci*. It did not hold that the sort of relief for which Leadenhall prayed was traditionally available in courts of equity. Instead, in the district court's reasoning, appending any equitable prayer would do. Its reasoning comprises a list of the nominally equitable prayers that appear in the complaint (and for good

---

[10] As addressed in Part I, *supra*, a security interest in Borrowers' assets does not authorize a freeze of Guarantors' assets.

-34-

measure, in the recently filed amended complaint too) and this conclusion: "These are equitable prayers for relief." (A.1347 at 53:10–11.)

**a.** By looking only to the equitable prayers for relief, the district court erred. In *Knudson*, the Supreme Court rejected just such an "approach[] which looks only to the nature of the relief" and thus might "permit[s] (what equity would never permit) an injunction against failure to pay a simple indebtedness . . . ." 534 U.S. at 216.

Indeed, *Grupo Mexicano* itself makes clear that a creditor cannot evade its holding by appending an equitable prayer: Much like Leadenhall, the creditor in *Grupo Mexicano* prayed for permanent injunctive relief. *See Grupo Mexicano*, 527 U.S. at 314.

It would have thus been illogical for *Grupo Mexicano* to distinguish *Deckert* merely because the plaintiff there appended an equitable prayer, and it did not. Instead, the Court distinguished *Deckert* because there, the plaintiff sought a particular sort of equitable relief: "the equitable remedies of rescission of the contracts and restitution of the consideration paid[.]" *Grupo Mexicano*, 527 U.S. at 325. Leadenhall seeks nothing of the sort here; it seeks to impose personal liability for an

-35-

allegedly overdue Accelerated Debt. *See Knudson*, 534 U.S. at 213 (setting out exacting requirements for *equitable* restitution, which Leadenhall cannot meet).

Nor does this case resemble *United States v. First National City Bank*, 379 U.S. 378 (1965), which *Grupo Mexicano* distinguished because, unlike Leadenhall, the creditor asserted an equitable lien on the particular property subject to the injunction. *See* 527 U.S. at 326.

And while the district court here invoked *Dong v. Miller* for its powers in a "mixed case," that case holds that "[i]t is . . . not true that the *Grupo Mexicano* rule falls away once a plaintiff asserts any claim for equitable relief." 2018 WL 1445573, at *8 (E.D.N.Y. Mar. 23, 2018). There, the court applied *Gucci* and *Knudson* faithfully. It denied plaintiff's request to freeze assets in connection with contract and fraudulent-conveyance claims, for which plaintiff sought the "essentially legal" relief of money. *Id.* at *7. The restraint it issued was instead narrowly tailored to the "equitable-lien claims," which sought equitable relief "in the form of liens on specific assets that are currently in Defendants' possession but, according to Plaintiff, 'belonging in good conscience to [him].'" *Id.* at *10 (quoting *Knudson*, 534 U.S. at 213)

-36-

(alteration in original).  *Cf. Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, 2013 WL 1915330, at *5 (S.D.N.Y. May 9, 2013) (holding that when an equitable interest is "limited to [particular] assets, only those assets may be enjoined").

**b.** Here, Leadenhall appends two sorts of nominally equitable prayers to its contract claims:  a prayer to enjoin violations of contract "enjoining Defendants violating their obligations under the Agreements" and prayers to declare contractual rights.  (A.117 ¶ 282.)  Yet controlling Supreme Court precedent holds that appending precisely those prayers cannot yield an equitable claim for relief. [11]

In *Knudson*, the Court resolved whether, by praying for "injunctive and declaratory relief" to enjoin violations of the parties' agreed terms, "enforce [a] reimbursement provision," and recover money, plaintiff sought "equitable relief," and in particular "those categories of

---

[11] Several courts have derided this tactic, calling it an ineffectual "facile trick."  *See, e.g., Wal-Mart Stores, Inc. Assoc.'s Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) (Posner, J.) (rejecting the "facile trick" of seeking to convert a contract claim into an equitable claim by "asking that the defendant be enjoined from refusing to honor its obligation to pay the plaintiff what the plaintiff is owed under the contract and appending to that request a request for payment of the amount owed.").

relief that were *typically* available in equity."  534 U.S. at 208, 210 (citations omitted).

The Court, in a holding that controls here, ruled that the relief sought was legal, not equitable. *Id.* at 221.  The Court looked through plaintiff's prayers and characterized plaintiff's claims for relief based on the "essence" of what they "seek."  *Id.* at 210.[12]  And much like Leadenhall, plaintiff sought, at bottom, to "impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity."  *Id.*  In fact, the Court ruled that "[a]lmost *invariably* . . . suits seeking (whether by judgment, *injunction, or declaration*) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . .  And '[m]oney damages are, of course, the classic form of legal relief.'"  *Id.*  (emphasis added) (citation omitted).

Claims arising from "a *contractual* obligation to pay *past* due sums," like Leadenhall's, simply do not sound in equity.  *Id.* at 212 (emphasis in original); *see id.* at 201–211, 216.

---

[12] This Court does the same.  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005) ("declin[ing]" the "invitation to perceive equitable clothing where the requested relief is nakedly contractual").

**c.** Nor can Leadenhall's prayer for "'[a]n order voiding fraudulent transfers and rescinding payments related thereto,'" (A.1347 53:3–6, 8–10), authorize an asset freeze. That prayer (and Leadenhall's fraudulent transfer claims) were added only with Leadenhall's August 30 amendment. (*Compare* Complaint (A.37) (May 3, 2024), *with* Amended Complaint (A.1073) (filed August 30, 2024, corrected September 6, 2024).) Leadenhall has never applied for injunctive relief based on those claims, and it has thus not shown that it is likely to succeed on them.

Moreover, those claims are far afield of Leadenhall's contract claims and Guarantors' assets. (*See* A.1148–51, 1224–27 ¶¶ 221–29, 403–16.) They are entirely inapt.

## B. **The Preliminary Injunction Is Ancillary Only to Leadenhall's Contract Claims for Money Damages.**

The district court further erred because its prejudgment asset freeze against Guarantors' assets is ancillary only to Leadenhall's contract claims—not any final equitable relief. And "seeking equitable assistance in the collection of a legal debt" simply "has nothing to do with the preliminary relief" that is properly "available in a suit seeking equitable relief." *Gucci Am.*, 768 F.3d at 131 (quoting *Grupo Mexicano*, 527 U.S. at 325.).

-39-

The preliminary injunction is ancillary only to the money damages Leadenhall seeks. Leadenhall sought an injunction against Borrowers and Guarantors' assets up to approximately $609 million—the measure of its alleged contract damages, including unpaid interest and other fees. *See supra* Statement of the Case and Fact B.3. And Leadenhall admitted repeatedly that the preliminary relief it sought "relate[d] specifically to its claims arising from contractual agreements with" the 777 Defendants and the "Accelerated Amount undisputedly due thereunder." (A.192; *see also* A.368 ¶ 5 (seeking injunction "to prevent Defendants from . . . becoming insolvent to prevent Leadenhall from enforcing any judgment against Defendants in this litigation."); A.838 ("Leadenhall . . . seeks to preserve its ability to recover $609 million in accelerated debt."); A.1016 ("Leadenhall seeks injunctive relief 'to preserve assets as security for a potential monetary judgment[.']" (internal citation omitted)).) Preserving its ability to collect money damages was Leadenhall's only justification.

The district court also made clear that the preliminary injunction's sole purpose is to "prevent the defendant borrowers and guarantors from dissipating their assets to frustrate the collection of a

-40-

final judgment." (A.1338 at 44:9–11.)  That purpose is evident on the face of the preliminary injunction:  it enjoins dissipation of money and assets sufficient to satisfy Leadenhall's claim for $609 million contract damages. *See supra* Statement of the Case and Fact B.3.

Because the restraint is not ancillary to any claim for  final equitable relief, the district court lacked the authority to enter the preliminary injunction.

### C.  No Prayer to Compel a Pledge of Sufficient Collateral Creates an Equitable Interest.

In denying A-CAP's motion to modify the preliminary injunction order, the district court ruled, based on Sections 1 and 2(a) of the Guaranty, that "Leadenhall also ha[d] an interest in the assets of the guarantors who guaranteed 'performance when due (whether at stated maturity, by acceleration, or otherwise) of the Guaranteed Obligations' including the obligation to pledge a first-priority security interest." (A.1346 at 52:19–23; see also A.1347–48.)  But for three main reasons, restraining all of Guarantors' assets on that basis is error.

*First*, any such "interest" is purely contractual, not equitable.

*Second*, Leadenhall neither claims nor applied for preliminary relief based on any asserted obligation to pledge collateral.

Indeed, neither Leadenhall's complaint nor its application for preliminary relief so much as suggests that Guarantors breached any obligation to pledge additional collateral. It thus has never demonstrated any likelihood of success on such a theory. *Cf. Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008) (requiring plaintiff to show a likelihood of success on the merits). And Leadenhall certainly has not shown a likelihood to meet the particularly high burden to compel performance through a mandatory preliminary injunction, which "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (affirming denial of mandatory preliminary injunction to compel specific performance). Moreover, Leadenhall has never asserted a specific performance claim against either Borrowers or Guarantors.[13]

    *Third*, under its plain language, neither the LSA (between Leadenhall and Borrowers) nor the Guaranty Agreement (between

---

[13] Such a prayer would make no difference. "[S]pecific performance of a past due monetary obligation[] was not typically available in equity." *Knudson*, 534 U.S. at 210–11.

-42-

Leadenhall and Guarantors), obligated either party to set aside or pledge any collateral.  In interpreting such an obligation into the agreements, (A.1346 at 52:17–23; A.1349–50 at 55:24–56:3), the district court erred.

The core "Obligation" of each Borrower under the LSA is "the punctual payment when due of all obligations and indebtedness of such Borrower."  (CA–61 § 1.01.)  The "Covenants" of Section V supply Borrowers' other Obligations.  Pledging collateral is not one of them.

Under the part of the LSA that deals with Collateral, Section 2.15, Borrower "hereby grants . . . a first-priority security interest in the Collateral" "[t]o secure the performance by the Borrowers of all of the Obligations."  (CA–82 § 2.15(a) (emphasis added).)  And the Pledge Agreements underscore that the pledging of collateral occurred upon execution of the LSA and is not itself an Obligation, but a means of "securi[ng] the prompt and complete payment or performance . . . of all Obligations." (CA–516 § 2.2; CA–528 § 2.2; CA–540 § 2.2; CA–552 § 2.2.) There is thus no Obligation for Borrowers or Guarantors to provide substitute or additional collateral.  If there were such an Obligation, surely that defined term would have been defined to include it.

-43-

*Fourth*, even a purported contract-based prayer to "set aside sufficient assets" and pledge them as additional collateral, (A.1032), (on which a plaintiff has shown it is likely to succeed), creates no equitable interest in any particular asset. Yet courts only have the power to enjoin "particular funds or property" in which the creditor has an equitable interest. *Knudson*, 534 U.S. at 213–14 .

By asserting that it is "contractually entitled to [the pledging of] some funds for benefits that [it] conferred" under the LSA, *id.*, Leadenhall asserts no equitable interest in any of Guarantors' assets "which equity could then act upon." *Grupo Mexicano*, 527 U.S. at 323. *Accord Prosper, Inc. v. Innovative Software Techs.*, 188 F. App'x 703, 705 (10th Cir. 2006) ("As we have rejected the idea that [the plaintiff] is seeking to litigate a specific asset or fund of [the defendant], we do not find applicable the notion that a district court has the power to grant an interlocutory injunction to preserve a fund that might be subject to a final decree . . . ."); *Prof'l Merch.*, 2013 WL 12109397, at *2; *Paradigm BioDevices*, 2013 WL 1915330, at *5.

\*    \*    \*

-44-

By treating Leadenhall's security interest in Borrowers' assets as authority to enjoin Guarantors' property, the court contradicted *Grupo Mexicano*'s core holding.  And by crediting Leadenhall's equitable window dressing as establishing a genuine equitable interest, the court defied *Knudson*'s clear teaching.  These errors in applying settled legal principles warrant reversal or vacatur.

## **CONCLUSION**

For these reasons, this Court should vacate that portion of the district court's preliminary injunction that restrains assets of the Guarantors.

Dated:  New York, New York
        November 22, 2024

                        By: /s/ *Jonathan M. Watkins*
                            Jonathan M. Watkins
                            *Counsel for Advantage Capital*
                            *Holdings LLC and Kenneth*
                            *King*

-45-

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for Appellant certifies that this motion:

(i)    complies with the word limitations of LR 32.1(a)(4) because it contains 8,395 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as calculated by the word processing system used in its preparation; and

(ii)    complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in Microsoft Word using the proportionally-spaced typeface of Times New Roman in 14-point font.

Dated:  New York, New York
        November 22, 2024

                                    By: /s/ *Jonathan M. Watkins*
                                        Jonathan M. Watkins
                                        *Counsel for Advantage Capital*
                                        *Holdings LLC and Kenneth*
                                        *King*

# SPECIAL APPENDIX

**i**

## TABLE OF CONTENTS

**Page**

Order of the Honorable John G. Koeltl, dated July
    8, 2024 ................................................................... SPA-1

Order of the Honorable John G. Koeltl, dated
    October 2, 2024 ................................................... SPA-4

SPA-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**LEADENHALL CAPITAL PARTNERS LLP, ET AL.,**

                              **Plaintiffs,**

          **- against -**

**JOSH WANDER, ET AL.,**

                              **Defendants.**

---

24-cv-3453 (JGK)

ORDER

**JOHN G. KOELTL, District Judge:**

Upon the Complaint by Plaintiffs Leadenhall Capital Partners LLP and Leadenhall Life Insurance Linked Investments Fund PLC (together, "Leadenhall"); the accompanying declarations of Craig Gillespie, Phil Kane, Luca Albertini, and Leigh M. Nathanson; and the Memorandum of Law in Support of Plaintiffs' Application for a (i) Temporary Restraining Order, and (ii) a Receivership or, Alternatively, a Preliminary Injunction, it is ordered, that Defendants 777 Partners LLC, 600 Partners LLC, SPLCSS III LLC, Dorchester Receivables II LLC, Signal SML 4 LLC, and Insurety Agency Services LLC (together, the "Borrowers and Guarantors") are hereby subject to the following preliminary injunction:

Pursuant to Federal Rule of Civil Procedure 65, and based on the findings of fact and conclusions of law stated on the record on June 7, 2024, ECF No. 128, the Court finds that the Temporary Restraining Order previously entered, ECF No. 114, should be issued as a preliminary injunction. The Court enters a preliminary

SPA-2

injunction that, other than in the normal and ordinary course of business:

(A) prohibits selling, transferring, converting, pledging, or encumbering the assets pledged as collateral by the Borrowers to Leadenhall under the Loan and Security Agreement dated May 7, 2021;

(B) to the extent the value of the assets pledged as collateral by the Borrowers to Leadenhall is less than the full amount of the Accelerated Debt, prohibits the expenditure or dissipation of any cash or cash equivalents owned by the Borrowers and Guarantors sufficient to cover the full amount of the Accelerated Debt;

(C) to the extent the value of (i) the assets pledged as collateral by the Borrowers, plus (ii) the value of any cash or cash equivalents owned by the Borrowers and Guarantors is insufficient to cover the full amount of the Accelerated Debt, prohibits the expenditure or dissipation by the Borrowers and Guarantors of any cash or cash equivalents received from any sale or transaction up to the full amount of the Accelerated Debt;

(D) prohibits the Borrowers and Guarantors from taking any action to dissipate the value of their assets, including by transferring assets to any Defendant;

(E) requires the Borrowers and Guarantors to provide notice to Leadenhall, ING Capital LLC, National Founders LP, Haymarket

2

SPA-3

Insurance Company, and ACM Delegate LLC of any attempt by any Defendant to foreclose on, repossess, or exercise remedial actions against the assets of the Borrowers and Guarantors and/or prevent any Defendant from foreclosing on, repossessing, or exercising remedial actions against the assets of the Borrowers and Guarantors.

**SO ORDERED.**

Dated:    New York, New York
         July 8, 2024

                                   _____
                                   John G. Koeltl
                                   **United States District Judge**

3

SPA-4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----

LEADENHALL CAPITAL PARTNERS LLP, ET
AL.,                                            24-cv-3453 (JGK)
                        Plaintiffs,

                                                ORDER
        - against -

    JOSH WANDER, ET AL.,
                        Defendants.

----

JOHN G. KOELTL, District Judge:

    For the reasons stated on the record today, Defendant

Advantage Capital Holdings LLC's motion to modify the

preliminary injunction pursuant to Rule 59(e) is **denied**. The

Clerk is respectfully directed to close ECF No. 152.


SO ORDERED.
Dated:    New York, New York
          October 2, 2024

                                        John G. Koeltl
                                    United States District Judge